John R. WILLINGHAM,
Plaintiff-Appellant,

STAR CUTTER COMPANY, Joined
as Plaintiff,

v.

Norman B. LAWTON et al.,
Defendants-Appellees,

and

Star Cutter Company, Party
Defendant-Appellee.

No. 76–1096.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 11, 1977.

Decided May 26, 1977.

Rehearing Denied June 27, 1977.

William T. Sevald, Royal Oak, Mich., for plaintiff-appellant.

Frederick D. Steinhardt, Goldman, Mason & Steinhardt, Detroit, Mich., Gilgert E. Gove, Detroit, Mich., George N. Hibben, Chicago, Ill., Edward B. Evans, Cincinnati, Ohio, Charles R. Rutherford, Detroit, Mich., Francis J. Fodale, George E. Frost, Patent Section, GMC, Robert V. Seymour, Travis Warren, Hammond, Zeifelman & Burgoyne, Detroit, Mich., Dennis A. Gross, James Van Santen, Hill, Gross, Simpson, Van Santen, Steadman, Chiara & Simpson, Chicago, Ill., James A. Smith, Bodman, Longley, Bogle, Armstrong & Dahling, David J. Wood, William A. Wood, Jr., Robert A. Choate, Lloyd M. Forster, Detroit, Mich., Elwood S. Kendrick, Los Angeles, Cal., Randall G. Litton, Grand Rapids, Mich., William E. Johnson, Dearborn, Mich., for defendants-appellees.

John A. Reilly, Kenyon, Kenyon, Reilly, Carr & Chapin, New York City, for Ford Motor Co. & H. Ford II.

Before PHILLIPS, Chief Judge, and WEICK and EDWARDS, Circuit Judges.

PHILLIPS, Chief Judge.

The principal issue presented on this interlocutory appeal is whether the owner of a two-thirds undivided interest in a patent can maintain an action for infringement without the voluntary joinder of the co-owner, where the co-owner is joined in the litigation as involuntary party plaintiff pursuant to Fed.R.Civ.P. 19(a), and where the co-owners have entered into the following written agreement:

> (10) In the event of any third party infringement of the Letters Patent, or any of them, the party having knowledge thereof shall promptly notify the other party of such infringement, whereupon the parties hereto shall consult with a view to reaching an agreement as to the ways and means of eliminating such infringement. If both parties desire to litigate such infringement they shall share any costs thereof and any recovery therein equally. In the event that either party desires to litigate such infringement and

the other party refuses or fails to do so, or refuses or fails to bear one-half (½) the cost thereof in return for one-half (½) the recovery, the party desiring litigation may in his or its sole discretion, and at his or its sole cost and expense, bring suit to restrain such infringement, and shall be entitled to receive and retain, for his or its own use and benefit, any recovery awarded in such suit.

We hold that under the foregoing language of the contract, and the other facts of this case, the appellant has a right to maintain suit for infringement.

Accordingly, we reverse the district court on this issue and remand for further proceedings. We affirm the decision of the district court on all other issues presented on this appeal.

### I.

The appeal grows out of four consolidated cases filed by John R. Willingham, plaintiff-appellant, alleging patent infringement.[1] Joint ownership is involved in only one of the patents, designated in the record as the reamer patent.[2]

Before proceeding to resolve the other issues in the case, the district court ruled that Willingham would be required to show a sufficient title to the patents to enable him to maintain an action for their alleged infringement. The district judge initially ordered a trial on this issue, limited by the following provision of the pre-trial order:

The issues of law and fact to be tried shall be limited to issues which would affect the ownership of patents, and con-

1. Numerous other issues are raised by the pleadings including charges of breach of contract, anti-trust violations, unfair competition and fraud.

2. United States Reissue Patent No. 24,769, issued December 17, 1957, claiming a hole enlarging and finishing tool.

3. Other agreements between Willingham and Star are identified in the record as Agreements A, B, C and E.

4. The litigation has been before this court on two previous occasions. In *Willingham v.*

sequently the right to sue for infringement of them.

The trial record indicates that on April 1, 1960, Willingham sold to appellee Star Cutter Company (Star) a one-third undivided interest in the reamer patent by a written contract, identified in the record as Agreement D,[3] which contained the following language:

(1) Willingham, by these presents, does sell, assign and transfer unto [Star] and [Star] does hereby purchase and acquire an undivided one-third (⅓) interest in the whole right, title and interest in and to [the reamer patent] . . . the same to be held and enjoyed by [Star] for its own use and behoof and for the use and behoof of its successors . . ., as fully and entirely as the same would have been held and enjoyed by Willingham had this assignment and sale not been made . . . .

Agreement D also contained the language quoted in the first sentence of this opinion granting to either party the right to initiate an infringement action at "his or its sole discretion."

Star did not join in Willingham's action for infringement, but was made an involuntary plaintiff pursuant to Fed.R.Civ.P. 19(a).

The district court held that Star owned an undivided interest in the reamer patent and that, since Star did not join voluntarily as plaintiff, Willingham did not have the right to maintain this action for infringement. The case was certified for interlocutory appeal under 28 U.S.C. § 1292(b).[4] The

*Kneeland Industries,* 415 F.2d 755 (6th Cir. 1969), this court vacated the district court's order of dismissal and remanded with instructions to grant plaintiff leave to file a substitute amended complaint. On November 11, 1975, this court dismissed the appeal in No. 75–1876 on the ground that the judgment of the district court was not final and had not been certified for appeal pursuant to 28 U.S.C. § 1292(b). Thereafter Willingham obtained the necessary certification and we granted leave to file the present interlocutory appeal.

district court also made extensive findings of fact on other issues, which we hold not to be clearly erroneous. Fed.R.Civ.P. 52(a).

■ Willingham contends that the interest acquired by Star under Agreement D was a mere license because the limitations placed upon Star in the agreement were incompatible with a claim of ownership by Star. Agreement D, as we read it, clearly indicates a sale of a one-third interest to Star. It provides that Willingham

> [D]oes sell, assign and transfer unto [Star] . . . an undivided one-third interest in the whole right, title and interest in [the reamer patent] . . . the same to be held and enjoyed by Star as fully and entirely as the same would have been held and enjoyed by Willingham had this assignment and sale not been made . . . .

The reservation of certain rights, including the right to a reassignment of the patents if Star failed to pay its obligation to Willingham, did not convert this assignment into a license. *See, Waterman v. MacKenzie,* 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891). We, therefore, agree with the district court that Willingham and Star are co-owners of the reamer patent.

Next, Willingham asserts that he has an express contract right under Agreement D to sue for infringement of the reamer patent without the consent of the co-owner Star. Star responds that joint ownership of a patent is a unique relationship and that a district court cannot entertain a patent infringement suit where all the co-owners are not voluntarily joined as plaintiffs. It is without significance, Star says, that Agreement D gave Willingham a right to sue in his sole discretion since there is no legal basis for suit absent complete ownership of the patent by Willingham or voluntary joinder of all co-owners as plaintiffs. Alternately, Willingham argues that the adoption of amended Fed.R.Civ.P. 19(a) in 1966, mandates that Star be joined as a party and the district court had no discretion in the matter. Star rejoins that Rule 19(a) is procedural and does not alter the substantive law requiring voluntary joinder of all co-owners of a patent in a suit for its infringement.[5]

■ We recognize the general rule that all co-owners of a patent must be joined as plaintiffs before an infringement suit can be initiated. *Waterman v. MacKenzie, supra,* 138 U.S. at 255, 11 S.Ct. 334, at 335; *Switzer Brothers, Inc. v. Byrne,* 242 F.2d 909, 912–13 (6th Cir. 1957); *Hurd v. Sheffield,* 181 F.2d 269, 271 (8th Cir. 1950). This principle was enunciated in *Waterman,* where the Supreme Court said:

> The patentee or his assigns may, by instrument in writing, assign, grant and convey, either, 1st, the whole patent, comprising the exclusive right to make, use and vend the invention throughout the United States; or, 2d, an undivided part or share of that exclusive right; or, 3d, the exclusive right under the patent within and throughout a specified part of the United States. Rev.Stat. § 4898. A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers; in the second case, jointly with the assignor; in the first and third cases, in the name of the assignee alone.

This court relied heavily on *Waterman* in our decision in *Switzer Brothers, Inc. v. Byrne, supra,* 242 F.2d at 912, when we held that all co-owners of a patent must join in an infringement suit at its inception.

Neither *Waterman* nor *Switzer* presented the issue of whether a co-owner could authorize by contract another co-owner to file suit for patent infringement without the permission of the first co-owner, in an action in which the unwilling co-owner is joined as an involuntary plaintiff under Rule 19. That is the crux of the problem in

---

5. In view of our disposition of this case finding a waiver by Star of any rights it might have had, we need not reach this issue. *Compare Provident Tradesman Bank & Trust Co. v. Pat-* terson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) with *Gibbs v. Emerson Electrical Manufacturing,* 29 F.Supp. 810 (D.Mo.1939).

the present case. Star contends that the above-quoted contractual provisions are ineffective to confer on a co-owner of a patent a unilateral right to sue. As authority for this proposition Star cites, among other cases, *Agrashell, Inc. v. Hammons Products Co.,* 352 F.2d 443 (8th Cir. 1965); *Duplan Corp. v. Deering Milliken, Inc.,* 184 U.S.P.Q. (D.S.C.1974), *rev'd on other grounds sub nom., Duplan Corp. v. Deering Milliken Research Corp.,* 522 F.2d 809 (4th Cir. 1975); *Sims v. Mack Trucks, Inc.,* 407 F.Supp. 742 (E.D.Pa.1976), and our decision in *Switzer.* As we indicated above, our decision in *Switzer* is distinguishable from the present case because of the absence of contract provisions giving one co-owner the sole discretion to sue. In *Duplan* the district court in concluding that a contract could not confer upon a licensee the right to sue for infringement, stated that the Supreme Court had expressly rejected "the contention that a right to sue for infringement can be created by contract." However, the court in *Duplan* was relying on *Gayler v. Wilder,* 51 U.S. (10 How.) 477, 13 L.Ed. 504 (1850), a Supreme Court decision which, like *Duplan* itself, involved an attempt by a licensee to initiate an infringement suit. Rules applicable to a licensee are not controlling as to a co-owner under the circumstances of the present case. As for *Sims,* the plaintiff in that action was neither a licensee nor an owner, but a prior assignor who had no claim to the patent at the time he initiated the suit. The district court's holding that a provision in the contract of assignment which allowed the plaintiff-assignor to sue for infringement was ineffective, is inapposite to the present case. Further, the rationale of the Eighth Circuit in *Agrashell, Inc. v. Hammons Products Co., supra,* is not contrary to our holding in this case. *Agrashell* requires the joinder of all co-owners in the suit, a situation which exists in the present action by virtue of joinder of Star as an involuntary plaintiff pursuant to Rule 19(a).

The decisions indicate three primary interests protected by a requirement that all co-owners must join in a patent infringement suit: (1) the interest of a co-owner in being able to license third parties under his or her patent without harassing suits by other co-owners; (2) the interest of a co-owner in avoiding the estoppel effect of a judgment declaring the patent invalid in which he or she did not participate; and (3) the interest of a defendant in avoiding multiple suits concerning infringement of the same patent.

■ Co-owners of a patent have interests which are essentially distinct and separate. The nature of a patent is such that co-owners are at the mercy of each other. In the absence of a special agreement, each of the co-owners of a patent may make, use or sell the patented invention without accounting to the other owners. 35 U.S.C. § 262 (1952). It has been held that a co-owner of a patent can even grant a license to a third party without consent of the other owners and neither the co-owner-licensor nor the third-party-licensee is liable to the other owners. *Talbot v. Quaker State Oil Refining,* 104 F.2d 967 (3d Cir. 1939); *Bendix Aviation Corp. v. Kury,* 88 F.Supp. 243 (E.D.N.Y. 1950). *See Aberdeen Hosiery Mills Co. v. Kaufman,* 96 U.S.P.Q. 133 (E.D.N.Y.1953). The unlimited use of a patent by one co-owner could effectively destroy the value of a patent to the other co-owner. Within this framework, a rule requiring all joint owners to participate in an infringement suit effectively precludes one owner from filing an harassing suit against another owner's licensee.

The second interest protected by the rule is the co-owner's interest in preventing a decision in the co-owner's absence that might prejudice the enforceability of his or her patent. Under the decision in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1970), a defendant facing a charge of infringement of a patent may raise a plea of estoppel if the patent previously has been declared invalid. While a finding of invalidity or non-infringement is not necessarily binding on an absent owner under *Blonder-Tongue,* there is a possibility that the absent owner might be regarded as being in privity with the

co-owner who litigated the issue and thus be estopped under traditional principles of res judicata or collateral estoppel. See *Tycom Corp. v. Redactron Corp.,* 380 F.Supp. 1183, 1188–89 (D.Del.1974).

■ Agreement D provides that with respect to the reamer patent,

[I]n the event that either party desires to litigate . . . infringement and the other party refuses . . . the party ·desiring litigation may in his or its sole discretion . . . bring suit to restrain such infringement. . . .

This clause allows either co-owner a unilateral right to file suit against an infringer. We interpret this clause as a waiver by both co-owners of any right to protest the adverse consequences that could enure to his or its detriment from a suit initiated by the other co-owner. A co-owner who grants another owner a right to bring litigation in his "sole discretion" should not be allowed to argue later that such litigation should be precluded on the ground that it is detrimental to his interests in the patent. We conclude that Star, as a co-owner, waived protection of the two interests it had in preventing an infringement suit on its patent without its voluntary joinder in the action.

Arguments that Star was unable under the law of patents to modify its joint ownership interest in the patent by contract or waive its objections to a lawsuit are not convincing. 35 U.S.C. § 262[6], the only statutory section dealing with joint ownership of patents, specifically allows joint owners to change the relationship among themselves by agreement. We see no reason why joint owners could not waive by contract any rights they might have to object to joinder.

Finally, we consider the interest of a defendant in avoiding multiple suits concerning the same patent. Defendants in an infringement suit initiated by a single joint owner could have a justifiable fear that should they prevail and the court determine that the patent in suit is either invalid or not infringed, the remaining joint owners might still relitigate these issues at a later date in another costly and vexatious proceeding. Even though the remaining joint owners might be bound under traditional doctrines of collateral estoppel or res judicata, and despite the fact that such a repetitive suit may be an appropriate case for the awarding of attorney fees to defendants[7] defendants still could be prejudiced.

Fed.R.Civ.P. 19(a) was modified in 1966 to deal with problems of this nature. It provides as follows:

*(a) Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. . . .

The Advisory Committee's Note to the 1966 revision of Rule 19(a) makes clear how the rule was intended to operate:

Whenever feasible, the persons materially interested in the subject of an action

---

**6.** 35 U.S.C. § 262 (1952) provides:

§ 262. Joint owners

*In the absence of any agreement to the contrary,* each of the joint owners of a patent may make, use or sell the patented invention without the consent of and without accounting to the other owners.

July 19, 1952, c. 950, § 1, 66 Stat. 810. (Emphasis added.)

**7.** 35 U.S.C. § 285. *See, e. g., Deyerle v. Wright Manufacturing Co.,* 496 F.2d 45, 54–55 (6th Cir. 1974).

. . . should be joined as parties so that they may be heard and a complete disposition made.

\* \* \* \* \* \*

New *subdivision (a)* defines the persons whose joinder in the action is desirable. . . . Clause (2)(ii) recognizes the need for considering whether a party may be left, after the adjudication, in a position where a person not joined can subject him to a double or otherwise inconsistent liability. See Reed, *supra*, 55 Mich.L.Rev. at 330, 338; Note, *supra*, 65 Harv.L.Rev. at 1052–57; *Developments in the Law, supra*, 71 Harv.L.Rev., at 881–85.

\* \* \* \* \* \*

If a person as described in subdivision (a)(1)(2) is amendable to service of process and his joinder would not deprive the court of jurisdiction in the sense of competence over the action, he should be joined as a party; and if he has not been joined, the court should order him to be brought into the action. If a party joined has a valid objection to the venue and chooses to assert it, he will be dismissed from the action.

■ Making a patent owner an involuntary plaintiff is not new[8] and its use has been both advocated[9] and prohibited.[10] Joining Star as an involuntary plaintiff protects the interests of both the defendants. Accordingly, this court concludes that under the facts of the present case, Rule 19(a) requires the continued joinder of Star as an involuntary plaintiff in the infringement suit. Star, as an involuntary plaintiff, may elect to rely solely on Willingham and Willingham's counsel to litigate this case or it may choose, at its option, to participate actively in the suit. As involuntary plaintiff, it has an opportunity to participate in the litigation and protect its interests. Since it will be bound by the result, it would be precluded from initiating another action for infringement under the same facts.

## II.

This litigation also involves patents categorized as drill patents.[11] It was stipulated in the district court that Willingham has full title to the drill patents, and the district judge so held. On remand, Willingham will have the right to proceed with his action for the infringement of these patents.

## III.

■ Other patents involved in the case are identified in the record as the improvement patents.[12] The district court held that Star owned all the right, title, and interest to the improvement patents and that Willingham, having no title, could not maintain a suit for their infringement. Willingham contends that the finding of the district court is clearly erroneous. We conclude that the district judge was correct in this ruling and affirm the decision as to the improvement patents.

## IV.

Willingham makes numerous other contentions, asserting that Star breached Agreement D and Agreement E, and that Willingham was induced by fraud to enter into Agreement E. We conclude that the findings of fact of the district court on all

8. *Independent Wireless Telegraph Co. v. Radio Corporation of America*, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926).

9. 3A Moore's Federal Practice ¶ 19.06 at 2218, ¶ 19.14 at 2405 n. 5 (2d ed. 1974). *See* Wright & Miller, Federal Practice and Procedure, Civil § 1614, at 151 (1972).

10. *Gibbs v. Emerson Electrical Manufacturing Co.*, 29 F.Supp. 810 (D.Mo.1939).

11. United States Patent No. 2,898,786 issued August 11, 1959, claiming a center-cutting drill; Patent No. 2,780,947, issued February 12, 1957, claiming a tubular drill; and Reissue Patent No. 24,924 issued January 1, 1954, claiming a pin-cutting drill.

12. United States Patent No. 3,021,735, issued Feb. 20, 1962, claiming a work locating and clamping mechanism; Patent No. 3,054,308, issued Sept. 18, 1962, claiming a drill; and Patent No. 3,071,030, issued January 1, 1963, claiming a hole forming or enlarging assembly.

these issues are not clearly erroneous, Fed. R.Civ.P. 52(a), but to the contrary are supported by the record.

## V.

■ Willingham has made a motion in this court for the allowance of attorney's fees. This motion is premature and is overruled, without prejudice to any right Willingham might have to renew his motion in the district court, at a later date, an issue on which we express no opinion.

The judgment of the district court is affirmed in all respects except to the extent set forth in Part I of this opinion. As to the issue discussed in Part I, the decision of the district court is reversed. The case is remanded for a determination of the infringement issues relating to the reamer and drill patents. No costs are taxed. All parties will bear their own costs on this appeal.